# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

Sanderina, LLC, et al.,

    Plaintiffs

v.

Great American Insurance Company,

    Defendant

Case No.: 2:18-cv-00772-JAD-DJA

**Order Granting Great American Insurance Company's Motion for Summary Judgment**

[ECF No. 22]

    This is an insurance-coverage dispute regarding a policy issued to Sanderina, LLC and Sanderina II, LLC (collectively, Sanderina) by Great American Insurance Company. In 2017, Sanderina was the victim of an online scam. An unknown third party sent emails that appeared to be from Sanderina's majority owner to Sanderina's controller asking her to transfer funds to the imposter's bank accounts. Sanderina transferred $260,994, but was later able to recover $82,234.79. Sanderina filed a claim for the remaining sum with Great American, but it denied coverage.

    Sanderina sues Great American for (1) breach of contract, (2) breach of the covenant of good faith and fair dealing, and (3) violations of the Nevada Unfair Claims Practices Act. Great American moves for summary judgment, arguing that its policy does not cover this claim. Because the plain language of the policy does not cover losses from an incident like this one, Sanderina has not shown a genuine issue of material fact to sustain its claims. So I grant summary judgment in favor of Great American and close this case.

**Background**

Sanderina's insurance policy covers, among other things, forgery or alteration, computer fraud, and funds-transfer fraud.[1] In relevant part, the forgery-or-alteration provision covers losses "resulting directly from forgery or alteration of checks, drafts, promissory notes, or similar written promises, orders, or directions to pay a sum certain in money . . . ."[2] The computer-fraud provision extends to losses "resulting directly from the use of any computer to impersonate you, or your authorized officer or employee, to gain direct access to your computer system, or to the computer system of your financial institution, and thereby fraudulently cause the transfer of money . . . ."[3] Finally, the funds-transfer fraud provision covers losses "resulting directly from a fraudulent instruction directing a financial institution to transfer, pay or deliver funds from your transfer account."[4] In turn, "fraudulent instruction" is defined as a "written instruction . . . which purports to have been issued by you and which was sent or transmitted to a financial institution to establish the conditions under which transfers are to be initiated by such financial institution through an electronic funds transfer system and which was issued, forged or altered without your knowledge or consent."[5]

In 2017, an unknown third-party sent a series of emails to Donna Atwood, Sanderina's controller.[6] The emails appeared to have been sent by Victor Salerno, Sanderina's majority

---

[1] ECF No. 36-3.
[2] *Id.* at 11.
[3] *Id.* at 12.
[4] *Id.* at 27.
[5] *Id.*
[6] ECF No. 37-2 at 6–13.

owner.[7] The unknown sender's email address was nearly identical to Salerno's, except the domain name was altered from "usfantasy.com" to "usfontasy.com."[8] Over the course of eight days, the imposter asked Atwood to make six transfers to his bank accounts.[9] Atwood submitted the transfer requests to Bank of America, which transferred a total of $260,994 to the imposter.[10]

After recognizing that it was the victim of a scam, Sanderina investigated the incident. Sanderina's domain name was owned by former Sanderina employee Michael Knapp and registered through GoDaddy.[11] After contacting GoDaddy, Knapp reported to Atwood that GoDaddy "was insistent" that Sanderina's email accounts had not been hacked.[12] Rather, GoDaddy "opined someone was attempting deception."[13] Sanderina's consultant, Network Security Associates (Network Security), investigated whether there was a breach of Sanderina's computer systems.[14] Network Security was unable to identify any instances of a third party accessing Sanderina's computer system or email accounts.[15]

During discovery, Sanderina's Rule 30(b)(6) representative described the results of the investigation:

> Q: Do you know if the imposter ever logged into a computer system that was owned by Sanderina or accessed it in any way?

---

[7] *Id.*; ECF No. 22-1 at 6:25–7:3.
[8] ECF No. 37-2 at 6–13.
[9] *Id.*
[10] ECF No. 37-2 at 37.
[11] ECF No. 22-1 at 22:6–23:7.
[12] ECF No. 37-2 at 25.
[13] *Id.* at 24.
[14] ECF No. 22-1 at 17:4–18:6.
[15] *Id.* at 18:22–19:5.

| | | |
|---|---|---|
| A: | | I don't know the answer to that. I think we looked at it and we didn't really see a breach, but that doesn't mean there wasn't a breach. |
| Q: | | Did Sanderina hire any consultants, IT consultants or anything like that to analyze its computer systems and determine whether or not they had been accessed by a third party? |
| A: | | Yeah . . . . |
| Q: | | Do you know what the result of the [consultant's] investigation was? |
| A: | | My understanding was that they did not find a breach. |

. . .

    Q:        What is the factual basis for the contention that a criminal hacked into Sanderina's computer system?

    A:        Well, I don't know specifically that a criminal hacked in . . . . But it was important for us to point out that there was a potential hack into the system. We just didn't find it.[16]

Sanderina first notified Great American of its claim days after discovering the scam.[17] Sanderina later submitted a sworn proof of loss, which Great American denied.[18] Sanderina then filed this suit, and Great American now moves for summary judgment.

## Discussion

**A.    Standard**

Summary judgment is appropriate when the pleadings and admissible evidence "show there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."[19] When considering summary judgment, the court views all facts and draws all

---

[16] *Id.* at 17:4–19:5, 29:13–30:22.

[17] ECF No. 37-2 at 36.

[18] *Id.* at 53, 59.

[19] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citing Fed. R. Civ. P. 56(c)).

inferences in the light most favorable to the nonmoving party.[20] If reasonable minds could differ on material facts, summary judgment is inappropriate because its purpose is to avoid unnecessary trials when the facts are undisputed, and the case must then proceed to the trier of fact.[21] If the moving party satisfies Rule 56 by demonstrating the absence of any genuine issue of material fact, the burden shifts to the party resisting summary judgment to "set forth specific facts showing that there is a genuine issue for trial."[22] "To defeat summary judgment, the nonmoving party must produce evidence of a genuine dispute of material fact that could satisfy its burden at trial."[23]

**B.     Authentication of Exhibits**

Sanderina argues that the motion should be denied because Great American failed to authenticate its exhibits and trial courts may only consider admissible evidence on summary judgment.[24] Sanderina relies on outdated summary-judgment standards.[25] It is true that in *Orr v. Bank of America*, the Ninth Circuit "made it clear that 'unauthenticated documents cannot be considered in a motion for summary judgment.'"[26] But *Orr* was decided in 2002, and that decision interpreted Federal Rule of Civil Procedure 56 before its 2010 overhaul. The 2010 amendment "eliminate[d] the unequivocal requirement" that evidence must be admissible in its

---

[20] *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

[21] *Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995); *see also Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471 (9th Cir. 1994).

[22] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Celotex*, 477 U.S. at 323.

[23] *Sonner v. Schwabe N. Am., Inc.*, 911 F.3d 989, 992 (9th Cir. 2018).

[24] ECF No. 35 at 13–15.

[25] Sanderina also cites FRCP 56(e) as the rule's affidavit provision, *see* ECF No. 35 at 13, but the affidavit provision is now FRCP 56(c)(4).

[26] *Las Vegas Sands, LLC v. Nehme*, 632 F.3d 526, 533 (9th Cir. 2011) (citing *Orr v. Bank of Am.*, 285 F.3d 764, 773 (9th Cir. 2002)).

5

present *form* in order to be considered at summary judgment.[27] The rule now mandates only that the *substance* of the proffered evidence be admissible at trial, so Great American needed to demonstrate merely that its evidence can be presented in an admissible form.[28] Great American has met that burden.[29]

**C.     Breach of contract**

To prevail on a breach-of-contract claim, Sanderina must demonstrate: (1) the existence of a valid contract; (2) a breach by the defendant; and (3) damages as a result of the breach.[30] Neither Great American nor Sanderina disputes the existence of a valid contract or damages, leaving only the breach element at issue here. Great American argues that its policy's plain language provides no coverage for Sanderina's claim for four reasons: (1) the forgery policy covers negotiable instruments, not emails; (2) the computer-fraud policy covers losses resulting only from direct access to the insured's computer system; (3) the funds-transfer fraud policy does not apply; and (4) Sanderina's losses did not directly result from the fraudulent emails. Sanderina responds that: (1) the policy extends to Sanderina's claim; (2) direct access is an issue of material fact for trial; and (3) Great American did not sufficiently investigate the crime.

---

[27] *Romero v. Nev. Dep't of Corr.*, 673 F. App'x 641, 644 (9th Cir. 2016) (unpublished).

[28] *Id.*; *see also* Fed. R. Civ. P. 56 advisory comm. note to 2010 amendment.

[29] Even if the old standard applied, Great American's exhibits have been fully authenticated by the original motion for summary judgment, Sanderina's opposition, and the declaration attached to Great American's reply brief. For example, the deposition transcript for Sanderina's 30(b)(6) witness is properly authenticated by inclusion of the deponents' names and court-reporter's certificate, which are included in the excerpts attached to Sanderina's opposition. *See* ECF No. 36-2.

[30] *Cohen-Breen v. Gray Television Group, Inc.*, 661 F. Supp. 2d 1158, 1171 (D. Nev. 2009) (citing *Richardson v. Jones*, 1 Nev. 405, 405 (Nev. 1865)).

Sanderina's breach theory turns on the scope of the policy's coverage. "The starting point for the interpretation of any contract, including insurance policies, is with its plain language."[31] Clear and unambiguous provisions will be construed according to their plain and ordinary meaning,[32] but "[a]ny ambiguity in an insurance contract must be interpreted against the drafting party and in favor of the insured."[33] Applying these principles, I find that none of the three relevant policy provisions covers Sanderina's claim.

### 1. *Forgery*

The forgery-or-alteration provision covers losses "resulting directly from forgery or alteration of checks, drafts, promissory notes, or similar written promises, orders, or directions to pay a sum certain in money . . . ."[34] Sanderina argues that the policy covers "forgery . . . or . . . directions to pay a sum certain in money" and that the emails contained directions to pay money.[35] But the policy unambiguously requires "directions to pay a sum certain in money" to be "similar" to "checks, drafts, [and] promissory notes." The Ninth Circuit considered similar facts in *Taylor & Lieberman v. Federal Insurance Company* and concluded that emails containing directions to pay money were not similar to checks or drafts.[36] So it is clear that this provision does not cover Sanderina's losses here.

---

[31] *Hunt v. AAA Nevada Ins. Co.*, 369 F. Supp. 3d 1113, 1117 (D. Nev. 2019) (citing *McDaniel v. Sierra Health and Life Ins. Co., Inc.*, 53 P.3d 904, 906 (Nev. 2002)).

[32] *Id.* (citing *Dickenson v. Nevada*, 877 P.2d 1059, 1061 (Nev. 1994)).

[33] *Farmers Ins. Grp. v. Stonik By & Through Stonik*, 867 P.2d 389, 391 (Nev. 1994).

[34] ECF No. 36-3 at 11.

[35] ECF No. 35 at 22 (alteration in original).

[36] *Taylor & Lieberman v. Fed. Ins. Co.*, 681 F. App'x 627, 628 (9th Cir. 2017).

7

### 2. *Computer fraud*

The policy's computer-fraud provision covers losses "resulting directly from the use of any computer to impersonate you, or your authorized officer or employee, to gain direct access to your computer system, or to the computer system of your financial institution, and thereby fraudulently cause the transfer of money . . . ."[37] Great American argues that there is no dispute of material fact as to whether the perpetrator "gain[ed] direct access" to Sanderina's computer system, and thus Sanderina's claim must fail.[38] Sanderina responds that "direct access" is ambiguous and a disputed issue of material fact.[39]

In *Taylor & Lieberman*, the Ninth Circuit concluded that losses resulting from similar emails were not covered under a policy requiring "entry into" a computer system without authorization because "there is no support for [plaintiff's] contention that sending an email, without more, constitutes an unauthorized entry into the recipient's computer system."[40] The "direct access" requirement here is substantially similar to the "entry into" requirement in the *Taylor & Lieberman* policy, and this record does not support a finding that merely sending an email to a Sanderina employee constituted direct access to Sanderina's computer system.[41] Sanderina's 30(b)(6) representative testified that neither it nor Network Security found any

---

[37] ECF No. 36-3 at 12.

[38] ECF No. 22 at 11–16.

[39] ECF No. 35 at 16–19.

[40] *Taylor & Lieberman*, 681 F. App'x at 629.

[41] Cases from other circuits interpreting similar policies but finding coverage are distinguishable because the facts present emails that were infected with malicious code or intercepted by hackers. *See, e.g., Medidata Sols. Inc. v. Fed. Ins. Co.*, 729 F. App'x 117, 118 (2d Cir. 2018) ("[T]he attack represented a fraudulent entry of data into the computer system, as the spoofing code was introduced into the email system."); *Childrens Place, Inc. v. Great Am. Ins. Co.*, No. CV-18-11963-ES-JAD, 2019 WL 1857118 at *3 (D.N.J. Apr. 25, 2019) ("The Hacker redirected [email] messages to go to him." (alteration in original)).

8

evidence that the perpetrator accessed Sanderina's computer system.[42]  In its opposition, Sanderina conjectures a "high likelihood" that the perpetrator may have accessed Sanderina's computer system to "case the joint" because the emails were signed "Vic" and sent during the CEO's vacation.[43]  But Sanderina is required to "produce evidence of a genuine dispute of material fact that could satisfy its burden at trial,"[44] and Sanderina's speculation[45] is not evidence.  Because a reasonable person could not find on this record that the perpetrator directly accessed Sanderina's computer system, there is no genuine dispute of material fact for trial based on the computer-fraud provision.

### *3. Funds-transfer fraud*

The funds-transfer fraud provision covers losses "resulting directly from a fraudulent instruction directing a financial institution to transfer, pay or deliver funds from your transfer account."[46]  The policy defines "fraudulent instruction" as a "written instruction . . . which purports to have been issued by you and which was sent or transmitted to a financial institution to establish the conditions under which transfers are to be initiated by such financial institution through an electronic funds transfer system and which was issued, forged or altered without your knowledge or consent."[47]  Sanderina argues that the funds-transfer fraud provision applies because (1) the provision covers fraudulent instructions that are indirectly transmitted to

---

[42] ECF No. 22-1 at 17:4–19:5, 29:13–30:22.

[43] ECF No. 35 at 17.

[44] *Sonner*, 911 F.3d at 992.

[45] Great American points out that a "Google search . . . reveals numerous articles and online profiles that identify Salerno as 'Vic.'"  ECF No. 37 at 10.  Additionally, Salerno's email address was "vic@usfantasy.com."  ECF No. 37-2 at 7.

[46] ECF No. 36-3 at 27.

[47] *Id.*

9

financial institution through an unwitting employee and (2) "knowledge" and "consent" require more than approval of a transfer.[48]

But the Ninth Circuit considered a similar provision in *Taylor & Lieberman* and concluded that the policy did not extend to the plaintiff's losses resulting from similar emails for two reasons.[49] First, the fraudulent instruction was not without "knowledge or consent"—plaintiff "did not know the emailed instructions were fraudulent," but it "requested and knew about the wire transfers."[50] Second, the emails did not constitute "fraudulent . . . instructions issued to a financial institution" because the emails were sent to the plaintiff—not a financial institution.[51]

Both reasons apply equally here. Sanderina is not a financial institution, so the fraudulent instructions were not "sent or transmitted to a financial institution." Plus, Sanderina controller Donna Atwood requested and knew about the transfers, so the fraudulent instructions were not "issued, forged or altered without [Sanderina's] knowledge or consent." So there is no disputed issue of material fact for trial on the funds-transfer fraud provision either. And, because I find that there is no disputed issue of fact as to whether the policy covers Sanderina's loss, I grant summary judgment in favor of Great American on Sanderina's breach-of-contract claim.

**D. Remaining claims**

Sanderina concedes that if its coverage claim fails, so do its claims for breach of the covenant of good faith and fair dealing and violations of the Nevada Unfair Claims Practices

---

[48] ECF No. 35 at 23–24.
[49] *Taylor & Lieberman*, 681 F. App'x at 629.
[50] *Id.*
[51] *Id.*

Act.[52] Because there is no disputed issue of material fact for trial, I also grant summary judgment in favor of Great American on these remaining claims.

**E.    Discovery**

To stave off summary judgment, Sanderina also requests additional discovery under Rule 56.[53] Rule 56(d) provides "a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence."[54] To prevail on a Rule 56(d) request, the movant must show: "(1) that it has set forth in affidavit form the specific facts that [she] [hopes] to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion."[55] A Rule 56(d) motion "may be denied where the movant has been dilatory, or where the movant seeks irrelevant, speculative, or cumulative information."[56]

In its summary-judgment opposition, Sanderina details the discovery it hopes to conduct, including depositions of Great American witnesses and production of Great American's underwriting file and claims procedures. But Sanderina fails to comply with Rule 56(d) because

---

[52] ECF No. 35 at 25.

[53] Sanderina requests "Rule 56(f) relief" for additional discovery. ECF No. 35 at 26–27. Great American points out that the provision was moved "to subdivision (e) when Rule 56 was amended in 2010." ECF No. 37 at 17 n. 5. But "[s]ubdivision (d) carries forward without substantial change the provisions of former subdivision (f)." Fed. R. Civ. P. 56(d) advisory comm. note to 2010 amendment. So I apply Rule 56(d).

[54] *United States v. Kitsap Physicians Serv.*, 314 F.3d 995, 1000 (9th Cir. 2002).

[55] *Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp.*, 525 F.3d 822, 827 (9th Cir. 2008); *California v. Campbell*, 138 F.3d 772, 779 (9th Cir. 1998).

[56] *Slama v. City of Madera*, 2012 WL 1067198, *2 (E.D. Cal. March 28, 2012) (internal citations omitted); s*ee California Union Ins. Co. v. Am.*, 914 F.2d 1271, 1278 (9th Cir. 1990) (stating that under former Rule 56(f) a district court may deny a request for further discovery if the movant has failed to pursue discovery in the past or if the movant fails to show how the information sought would preclude summary judgment).

it did not attach an affidavit.  And, the underwriting file, claims procedures, and Great American's witnesses do not bear on the key issue of whether the perpetrator accessed Sanderina's computer system.  So I deny the Rule 56(d) request for additional discovery because it fails procedurally and substantively.

**Conclusion**

IT IS THEREFORE ORDERED that Great American's motion for summary judgment **[ECF No. 22] is GRANTED**.  I grant summary judgment in favor of Great American and against Sanderina on all claims.  The Clerk of Court is directed to ENTER JUDGMENT ACCORDINGLY and CLOSE THIS CASE.

Dated: September 11, 2019

_____
U.S. District Judge Jennifer A. Dorsey